Case No. 15-1237 et al. Bellagio, LLC Petitioner v. National Labor Relations Board Mr. Trimmer for the petitioner, Ms. Johnston for the respondent Good morning, your honors, and I reserve three minutes for my rebuttal. Good morning, and may it please the Court, Paul Trimmer of Jackson-Lewis for the petitioner, Bellagio. As the Court is aware, there are four unfair labor practice findings before it, all stemmed from a single meeting on May 13, 2013, where an employee requested a Weingarten representative. Before addressing each of the individual unfair labor practice findings, I think it's important to recall that when the Supreme Court issued its decision in Weingarten, it instructed the Board that the right to union representation during investigatory interviews must be applied in accordance with industrial reality. It may not interfere with legitimate employer prerogatives. In this case, the National Labor Relations Board has failed to do that. It has announced what amounts to a new bright-line rule that effectively precludes an employer from issuing a brief, paid, non-disciplinary investigatory suspension to individuals who wishes to have a steward present and no steward is available. The Board's finding that Bellagio violated the charging party's Weingarten rights and the law when it discontinued an investigatory meeting to pause its investigation by placing him on a suspension pending investigation conflicts with Weingarten and represents an inexplicable departure from the Board's prior decisions like Roadway Express and under this The Board's interpretation and application of Weingarten is entitled to no deference. In our view, the Board's rationale is illogical and the record doesn't support it. So turning to the first unfair labor practice finding, it's the Board's contention that Bellagio violated Brian Garner's Weingarten rights because it supposedly pressed him for a written statement. As noted in our papers, there's no dispute that Bellagio stopped interviewing the charging party about his efforts to solicit a tip after he requested a union representative. Well, but you can still violate Weingarten if you press before that point and that's all the Board was finding. Before the interview concluded, the evidence the Board says indicates that they were pressing the individual to give a written statement. Now, you have much stronger arguments from that point going forward. I don't know why you want to waste time on the Weingarten argument. As I read the Weingarten cases, they were doing what they are not permitted to do at that early stage. Thereafter, it becomes a much more interesting case. Let me address that comment and then I'll move on to what you're more interested in. From our perspective, the record does not show that the supervisor did anything other than try to find a steward and then after he was unable to do so, confirm with the employee that he did not wish to write a statement. Well, confirm meaning he had previously asked him to write a statement. Of course he did. He did do what you're not supposed to do, which is to, as I understand Weingarten, you're not supposed to press. You don't like the word press, fill it in with anything else you want to fill it in. Push to have something like that done absent a union representative. The stronger part of your case is what goes on afterwards. I'll move on then to what you're more interested in talking about. Other than I will, I do want to say one more thing. No, maybe go to the rest. That would be the good thing rather than the other. Okay. Just get to the rest. Okay, so the next part of it is whether or not placing the employee on suspension pending investigation violated the law, constitutes an adverse impact or an adverse employment decision under Rightline. We don't think it does. Your argument on that point is simply, what am I supposed to do? We tried to get a union representative. He wouldn't get one. We didn't refuse to do it. And the next day we had it. That's exactly right. The other thing about this case. We're going to have to ask the board about that. So what's the big deal? What's the employer supposed to do? Suppose this guy beat up a customer and same scenario, except the charges beat the daylights out of a customer and the employees as well. But I was defending myself in self-defense. The employer says, well, we've got to have an investigation. That's essentially what you're arguing, right? That's exactly right. No pay. We're not disciplining you, but we are going to investigate this. That's right. And the evidence in the record, because the general counsel didn't even address it during the trial, is undisputed that this kind of suspension pending investigation is commonplace at Bellagio with this union, with this type of employee. The other part of the right line analysis that you mentioned in hearing the board speak to is what is the but-for analysis here. The right line implies that he would not have been so disciplined but-for an anti-union animus, and I'm not sure what the board is going to tell us to support that conclusion here. Well, and what the board has essentially done is, and as you said earlier, what would the employee refuses to participate without a steward, he can't be placed on suspension pending investigation. The employer has no alternative other than returning someone to work and not being able to complete the investigation. Well, the key argument for you is there was no final disposition on a discipline. That's the key to this case. Yes. So suspension pending, it's almost an unfortunate term. What the employer has essentially said is, I understand this record, you use suspension pending investigation. But the point is, we'll have to finish this conversation later, and meanwhile, you should go home. We're not taking any money from you, and go home. We'll talk later. That's exactly right. It was a pause, and I think it's also important to note that this was when the charging party was asking for a union representative and talking about this list. There's no dispute that he knew how to get a steward at the time. It's not entrapment. This is not a criminal case, but he certainly was sending the Bellagio supervisor on a fool's errand, because again, the record shows that this charging party knew how to get a steward. There's a lead steward. It's utterly irrelevant, but to the extent that we're talking about an employee who was intimidated, this guy was not intimidated by anything. We agree with that. We agree with that. He was certainly on solid ground there. He was very comfortable with his situation. The other two things I'd like to move on to very quickly is the oral directive argument. I think that's well briefed. There's nothing I can add to that. I do want to talk about the surveillance claim just for a moment, because I think it's important to note that what the board has argued is that this was out of the ordinary, and that's what makes it constitute surveillance. But those cases don't support that. Those cases that they cite all talk about supervisors. Do you understand, and again, I'll be asking the board this, but do you understand what the evidence is that there wasn't unlawful surveillance at all here? There wasn't unlawful surveillance. Do you understand what the board's evidence is on that? I'm very much a fan, but I don't think there's any help you could offer. The evidence is a characterization by the ALJ that the supervisor gave this, looked at him aggressively, whatever that means. That's not evidence. That's a conclusion. Exactly. And the Bellagio, as you know, is an enormous hotel. This dispatch room is where every bag that goes through. I'm not going to lie on the fact that I've been there. You can take judicial notice. I don't want to go back. But this is not a break room, which is what the board's decision said. This is the nerve center of the Bell Department at one of the largest hotel casinos on the strip. And from our perspective, maybe there was additional course of activity, but that doesn't establish a surveillance violation. And with that, I'll say this. Give me your argument and make sure I understand her about this confusion over the ALJ finding it was a new rule and the board saying, no, it wasn't a new rule. Yes. The complaint alleged an orally promulgated rule of general applicability. And that's all the complaint alleged. That's exactly right. And during the trial, once the questions, once the charging party admitted that it was directed to only him and everyone admitted that they knew that it didn't restrict them from discussing discipline in the workplace under a decision that was issued about three precise situation did not constitute an orally promulgated rule. The questioning from our side stopped. There was no reason to get into additional evidence during the hearing. The board admitted as much, but then changed the theory of the complaint. And it's appropriate for the board to make findings when something has been fully litigated. But it's hard to believe that something could have been fully litigated when the theory had never been presented. Certainly, the general counsel could have amended his complaint. The NLRB gives general counsels very free reign in amending their complaint up to and including during the hearing. That could have happened in this case. It didn't. And it prejudiced the employer in a significant way. All right. Okay. Thank you. Thank you. May it please the court. My name is Rebecca Johnston, and I represent the National Labor Relations Board. Your Honors, this does not represent a new bright-line rule or a vast departure from Weingarten. Given the valid Weingarten request, under the Supreme Court's decision in Weingarten, Mr. Weidmeier had three very clear options of what he could do when faced with a valid Weingarten request. He could find a steward and grant the interview. Correct. He could end the interview, or he could offer the employee the choice to continue or forego the opportunity of the investigation. None of these things happened. Instead, he issued an adverse employment action. They tried to find a steward. They did end the interview. They did end the interview, but in the process, he issued an adverse employment action. What's the adverse employment? I mean, take the hypothetical that I gave to the other side. I'm very serious. I don't get this. This makes no sense to me. If an employer's in a situation, make it a really horrible scene. Put it in the Bellagio, where the employee allegedly beat up a customer. And the employee says, I was defending myself. He came at me first. And the employer says, we obviously have to get to the bottom of this. Now take the facts as you have them. They're in the room. The guy says, I want my union steward. And they look for him. They can't find it. He won't go look for a union steward. You mean to say the employer has now got to let that employee go back on the floor without finishing the investigation? I don't think so. That's not the law. That is not the law. Respectfully, Your Honor, this is in a scenario where the employee couldn't go back to work. Bellagio claimed that he became agitated during the interview, but that claim has been thoroughly discredited. The employer simply said, we're suspending, meaning you have to leave now with pay until we finish the investigation. I don't know anything in the law that says that's impermissible. We're not going to refuse your right to have a steward. In fact, they did it the next day. But you have to leave for now until we finish the investigation because something happened here, and we've got to get to the bottom of it. Your Honor, they didn't simply send the employee home and promise him that he would be paid for his time. No, they didn't. But they didn't say you won't be paid. And everyone understood this, that suspension pending investigation meant, presumptively, you're being paid. It may change later. You may lose if we find out you did beat up the customer or you were rude or whatever. But for now, you're on pay. Respectfully, Your Honor, I don't think that the understanding at that time was that he would be paid. He was sent home. He was told he would be trespassing if he returned. The suspension set forth the possibility of discipline, including discharge, and it set forth the possibility that he would not be paid for his time. Yes, there was absolutely that possibility because if there really was something that happened, the employer has the right to discipline. All of those things, however, at the time it was given to him, created the sense of uncertainty that had the tendency to— Well, but, I mean, if you get yourself in a situation, you may create some uncertainty about what's going to happen. What is the employer supposed to do in this kind of a situation? Again, in this type of situation, it has the three options. Here, where both—where the employer's claim that he couldn't return to work has been discredited, it could have sent him back to work. He only had 15 minutes left of his shift. Oh, no. I mean, the law does not say that we tell employers how to run their operation that way. That makes no sense. The board can't come in and say, well, if I was a manager, I would have let him go back to the floor because there were only 15 minutes left. That's not the way the law works. The problem here is that the suspension pending investigation was unlawfully motivated. It's not a case of them just simply sending him back to work. How so? They said, we'll go look for a steward. They couldn't find one. They said, you can go look for a steward. You said, no, I won't do it. So he's tied them up. He wouldn't do it. They couldn't find one. What is an employer supposed to do? Respectfully, in this case, they could send him back to work or they could... No. The law doesn't require that. The law does not say the board decides how an employer runs the floor, runs the shop, runs the whatever. When the employer hasn't taken disciplinary action, has merely said, we're going to have to delay this conversation until you get your steward. They were not saying, we will not talk to you if a steward's present. They were perfectly happy to have a steward. They made one dumb mistake, which was to press for a written statement. And that technically appears to have violated Weingarten. But beyond that, what are they supposed to do? Well, under Weingarten, they have a third option. They could ask the employee if he wanted to continue the interview without representation. Oh, he made it very clear he did not. And that's right. That was his right. That was okay. Or they could just meet out whatever discipline they wanted to give. They wanted to be fair. They wanted the investigation. They were trying to be fair. You're tiring them up. It's really unfair. I mean, it just makes no sense. And the example, as soon as I started in this case, the example occurred to me of an employer beats the daylights out of a customer. And the employee says, I was just defending myself, that's all. And the employer doesn't have a right to investigate that? That's not what the board is saying. And certainly there could be an instance where the employer could issue a suspension pending investigation because the employer proffered a reason that he couldn't be returned to work. That's not the case here. There's no... So they've got to explain why they're uncomfortable sending this person back to the floor. The person's getting paid. And there's a short delay between then and the next day. They've got to have a good reason as to why they're saying, you can't go back to the floor now until we finish the investigation? As part of their affirmative defense on their right line, they need to show that they would have issued the suspension, but... Well, before you get the affirmative defense, you have to show that something's been done wrong. Yeah. You just move the burden. Right. And the board's position is that... You have to show they did something wrong before they have to have an affirmative defense. The board's position... Now, the judge is asking you what was wrong with putting somebody on paid suspension while they investigated the complaint. And you start telling us about their affirmative defense. They don't need an affirmative defense case. You have to tell us what they did wrong. The part four analysis makes no sense in this context. I mean, when I read that, I'm like, what does that mean? Respectfully, your honor, is the concern that this is not an adverse employment action? The employer hadn't done anything wrong. They haven't taken any pay away, and they're saying we have to finish the investigation. You want a steward? Okay, you can't find... You won't find one. We can find one. We'll have to do it tomorrow. So go home for now, because we're not going to let you back on the floor until we've investigated. And they didn't say we're taking pay, and they didn't say we're definitely going to discipline you. They just said you have to go home. Can we find a warrant? But the court is looking at the suspension after the fact. When it was given to the employee, there was a prospect of discipline, and he was sent home with the prospect of not being paid. And for a Section 81 violation, that has a tendency, a reasonable tendency, to chill his Section 7 conduct. You could see a scenario where if employers are meeting out this SPI, the employee would simply not ask for a Weingarten representative because of the uncomfortable uncertainty of a suspension pending investigation. I would suggest to you there are literally thousands of situations in this country where things like this go on all the time, where the employer needs a little more time to finish up, and they say we're not going to... we're not taking any pay now, but we have to finish the investigation. And I can't imagine issuing a ruling that would say, no, employers don't have that right. Issuing a ruling in this case, however, wouldn't create a bright line rule that would say that employers couldn't do so in other circumstances. The problem is it would result in an inane decision from the D.C. Circuit. Respectfully. I'm not saying we'll get any one more answer. At least I got a smile out of you. If we could move just a little further along, what is the evidence of any unlawful surveillance here? I understand we have to give deference to the Board's analysis of evidence, but I'm at a loss as to what the evidence was that supports the conclusion that there wasn't unlawful surveillance here. Your Honor, after Mr. Garner was sent home, he went to the dispatch area to collect his belongings. He was discussing his adverse employment action. Would you get to the part that supports the concept that there was an adverse employment action? Yes, Your Honor. Mr. Weidmayer was sort of lurking in the background, and when he heard him discussing this, he popped in. He wasn't there. That's not lurking in the background. He was in a place he had every right to be. And he saw the employee there. He popped in. If that's surveillance, it's awfully hard to be a supervisor. As the Board found, he did so aggressively. He looked at him aggressively? He had his hands on his hips. He was forbidding him from discussing the terms and conditions of his employment. He hovered. You asked him first. Tell him he's not to be there. He wasn't saying you can't discuss terms of your employment. You can go somewhere else and do it. He did both. But you can't be on the premises. You've been suspended. He did both. He told him he could not discuss the terms and conditions and that he needed to leave. Then he hovered as he left. What's the evidence that he told him he couldn't discuss the terms somewhere else? He didn't say specifically. He just said you can't discuss them. He didn't say it, period. Leave him specifically out. If you don't say it specifically, you don't say it. He didn't tell him you can't discuss terms of your employment somewhere else. He told him, get out of here. You're suspended. That's right. He said you can't be discussing that matter in here. So is there still evidence to support the non-lawful surveillance here? That's the evidence that the Board provided. That's the best you got? Okay. Thank you, John. Thank you. We ask that the Court enforce the Board's order in full. Okay. Thank you. You have some time left. Do you think you need it? You really think you need it? Well, I would like to add one thing about the technical wine garden. You really think you have to go down there? Well, if you would humor me. I guess I have to. The technical wine garden violation, in terms of pressing Mr. Garner for a statement, we have discussed the evidence that the Board cited for the timing of that pressuring of a statement in detail on pages 3, 4, and 5 of our reply, and also page 33 of our opening brief, where we looked at what the ALJ actually found. And that's all that the Board relied upon. And that statement doesn't show, the factual findings don't show that we pressed him for a statement after that time. The other thing I would like to add is that wine garden is not Miranda. Wine garden has to be applied according to industrial realities. And the industrial reality of a business where employees are represented by a union and where discipline can be grieved and potentially arbitrated requires employers, generally speaking, to attempt to give the employee a chance to tell his side of the story. In this situation, Mr. Riedmeier simply confirmed that Mr. Garner didn't wish to talk until a steward appeared. We don't believe under wine garden that that should constitute an improper pressing for a statement. Thank you. Thank you. The case will be submitted.
judges: Brown, Edwards, Sentelle